ADAM B. WOLF (Bar No. 215914)
PEIFFER WOLF CARR KANE CONWAY & WISE, LLP
5042 Wilshire Blvd., No. 304
Los Angeles, CA 90036
Telephone: 415.766.3545
Facsimile: 415.402.0058
Email: awolf@peifferwolf.com

*Attorneys for Plaintiff William Alessi*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA (SOUTHERN DIVISION)

| | |
|---|---|
| WILLIAM ALESSI,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MULLEN TECHNOLOGIES, INC., MULLEN AUTOMOTIVE, INC., NET ELEMENT, INC. & DAVID MICHERY,<br><br>　　　　　Defendants. | Case No.  8:22-cv-415<br><br>**COMPLAINT FOR:**<br><br>1.　Breach of Contract<br>2.　Unjust Enrichment<br>3.　Breach of Implied Covenant of Good Faith and Fair Dealing<br><br>**JURY TRIAL DEMAND** |

Plaintiff William Alessi ("Plaintiff" or "Bill") hereby files the following complaint against Defendant Mullen Technologies, Inc. ("MTI"), Mullen Automotive, Inc. and Net Element, Inc. ("Net Element") (collectively, "Mullen") and Mullen's CEO and Founder, Defendant David Michery ("Michery") (collectively, "Defendants"), and alleges as follows:

## NATURE OF ACTION

1.　Michery approached Bill to work for MTI as a Vice President, and Bill accepted the position in 2017. MTI tasked Bill with using his prior knowledge of publicly traded companies to assist in bringing MTI public.

2.　Some years later, Bill decided he wanted to leave MTI's employment. Toward the end of his employment, Bill and Mullen executed a settlement agreement ("the Settlement Agreement"). As part of the Settlement Agreement, MTI was to issue Bill 400,000 shares of its Common Stock. Directly following that share allocation, the Settlement Agreement included the following subclause ("the

Subclause"): "Notwithstanding the foregoing, Alessi will receive no less than 400,000 shares of the acquiring company's common stock." The "acquiring company's stock" was in reference to the fact that MTI and Net Element had entered into a letter of intent ("LOI") for a reverse merger shortly before the Settlement Agreement was signed.

3.    The Settlement Agreement—a true and correct copy of which is attached as Exhibit A—looks as follows:

**Now, Therefore, for good and valuable consideration, the receipt of which is hereby acknowledged, The Parties hereby agree as follows:**

1) Upon execution of this Settlement Agreement, it is agreed by the Parties that MTI shall issue 400,000 common shares of MTI to William Alessi by August 11, 2020. William Alessi recognizes currently there is no public market for these common shares.

Notwithstanding the forgoing, Alessi will receive no less than 400,000 shares of the acquiring company's common stock.

In connection with any acquisition of MTI, the shareholders of MTI will only receive shares of the common stock of the acquiring company which are publicly traded in an established market.

2) This settlement agreement embodies the entire engagement agreement between MTI and William Alessi and supersedes any prior agreements, whether written or oral, with respect to the subject matter thereof.

**IN WITNESS WHEREOF,** the Parties hereto have caused the Settle Agreement to be duly executed and delivered as of the date first written above.

Mullen Technologies, Inc.

Signature _____

CEO

David Michery

Dated August 11, 2020

Employee

Signature _____

William Alessi

Dated August 11, 2020



4.    In November 2021, shortly after the agreement with Net Element was finalized, Bill sought to acquire the full amount of the 400,000 shares of Mullen that he was due. However, Mullen issued to Bill only 31,139 shares; it refused to furnish Bill 400,000 shares of stock owed in accordance with the Subclause of the Settlement Agreement.

5.      Mullen's attorney sent Bill a letter with a purported copy of the Settlement Agreement. Clownishly, Mullen had manually crossed out the Subclause from this copy. Mullen's attempted elimination of the subclause—which Bill saw for the first time in this letter—took place after all parties had signed the Settlement Agreement. Bill would not have signed the Settlement Agreement were it not for the inclusion of the Subclause. The altered contract that Mullen circulated looks as follows:

**Now, Therefore,** for good and valuable consideration, the receipt of which is hereby acknowledged, The Parties hereby agree as follows:

1)   Upon execution of this Settlement Agreement, it is agreed by the Parties that MTI shall issue 400,000 common shares of MTI to William Alessi by August 11, 2020.  William Alessi recognizes currently there is no public market for these common shares.

~~Notwithstanding the forgoing, Alessi will receive no less than 400,000 shares of the acquiring company's common stock.~~

In connection with any acquisition of MTI, the shareholders of MTI will only receive shares of the common stock of the acquiring company which are publicly traded in an established market.

2)   This settlement agreement embodies the entire engagement agreement between MTI and William Alessi and supersedes any prior agreements, whether written or oral, with respect to the subject matter thereof.

**IN WITNESS WHEREOF,** the Parties hereto have caused the Settle Agreement to be duly executed and delivered as of the date first written above.

**Mullen Technologies, Inc.**                                      Employee

Signature_____                             Signature_____

CEO                                                                          CEO

David Michery                                                          William Alessi

Dated August 11, 2020                                          Dated August 11, 2020



6.      The Settlement Agreement actually signed by Bill, which includes the subclause, is the operative agreement. Unfortunately, Bill needs to file the instant action to enforce the contract.

**PARTIES**

7.     Plaintiff William Alessi, is, and was at all times mentioned herein, a citizen of the state of North Carolina.

8.     Defendant Mullen Technologies, Inc. is incorporated in California. Its headquarters is located at 1405 Pioneer Street, Brea, CA 92821. MTI is in the business of motor vehicle manufacturing.

9.     Defendant Mullen Automotive, Inc. is incorporated in Delaware. Its headquarters is located at 1405 Pioneer Street, Brea, CA 92821.

10.    Defendant Net Element, Inc. is incorporated in Delaware. Its headquarters is located at 3363 NE 163rd Street, Suite 705, North Miami Beach, FL 33160.

11.    Defendant David Michery, is, and was at all times mentioned herein, a citizen of the state of California. Michery is the Chief Executive Officer and Founder of MTI.

**JURISDICTION AND VENUE**

12.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). All Defendants are citizens of a different state from Plaintiff, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

13.    Venue is proper in the Southern Division of this district because the contract at issue was drafted, entered into, and to be performed in Orange County.

**FACTUAL ALLEGATIONS**

14.    Prior to January 2017, Bill and Michery's acquaintance, Charles Wilson, provided Michery with Bill's contact information.

15.    On or about January 1, 2017, Michery contacted Bill on behalf of MTI.

16.    During Bill and Michery's initial conversation, Michery relayed that he wanted to take MTI public via a reverse merger with a NASDAQ company.

17.    Michery then asked Bill to assist with bringing MTI public because of Bill's experience with publicly traded companies.

18.    On or about February 3, 2017, Bill entered into a three-year employment agreement with the company.

19.     As part of his agreement with MTI, Bill took the role of Vice President, with the task of taking MTI public.

20.     Bill introduced MTI to various prospects that would result in MTI's becoming a public company.

21.     By July 2020, MTI had entered into a letter of intent ("LOI") for MTI to acquire Net Element via a reverse merger.

22.     Thereafter, as a result of a dispute between Bill and Defendants regarding the compensation that MTI owed Bill, Michery suggested they negotiate a settlement agreement.

23.     On August 11, 2020, Bill and MTI entered into a Settlement Agreement, which MTI drafted. The terms of the agreement included furnishing Bill with 400,000 shares of MTI common stock.

24.     As a result of the LOI, the Settlement Agreement included the following anti-dilutive Subclause: "Notwithstanding the foregoing, Alessi will receive no less than 400,000 shares of the acquiring company's common stock."

25.     The parties understood the Subclause to mean that if, and when, MTI completed the reverse merger with Net Element, Bill would receive no less than 400,000 shares of Mullen.

26.     Shortly following the execution of the Settlement Agreement, MTI furnished Bill with 400,000 MTI shares, which were held at MTI's pre-merger transfer agent of record, AST Financial.

27.     On August 20, 2020, Bill requested a copy of the board resolution for the issuance of the 400,000 shares from Jerry Alban, Mullen's Chief Operating Officer. When Bill received a copy there was a handwritten strike-through of the Subclause.

28.     Apart from the fact that the subclause was not crossed out when Bill and Michery signed the agreement, it is unclear when thereafter the Subclause was crossed out. From the color and width of the pen markings on the cross-out, it appears that Michery crossed out the Subclause.

29.     In November 2021, a little over a year after Bill signed the Settlement Agreement, MTI finalized its deal with Net Element. As a result of the transaction there was an "acquiring company."

30.     Following the merger, in alignment with the August 2020 Settlement Agreement, Bill tried to electronically transfer his 400,000 shares, through AST Financial into his personal brokerage

account. AST Financial directed Bill to contact Continental Stock Transfer ("Continental"), Mullen's post-merger transfer agent of record.

31. Bill contacted Continental to inquire about transferring the 400,000 shares to his broker. However, Continental advised that it showed merely 31,139 shares in Bill's account. The dilution of the shares was due to MTI's deal with Net Element.

32. Bill requested that 400,000 shares—not 31,139—be issued to his account pursuant to the Subclause of the Settlement Agreement. Bill furnished a true copy of the Settlement Agreement to Continental for review.

33. Rather than receiving the full 400,000 shares, on or about November 30, 2021, Bill received a letter from Mullen's attorneys, notifying him that Mullen refused to transfer the additional shares. The letter said the additional shares would be worth roughly $4.2 million (using the average market price for the two weeks preceding November 30, 2021).

34. The letter from Mullen's attorneys included a purported copy of the Settlement Agreement. The Subclause was crossed out, as it was in the purported copy of the Settlement Agreement he received from Jerry Alban.

35. Bill has been unsuccessful in his attempts to recover the additional shares to which he is entitled pursuant to the operative version of the Settlement Agreement.

## CAUSES OF ACTION

### Count One: Breach of Contract

36. Plaintiff incorporates by reference all paragraphs of this Complaint as if fully stated herein.

37. Plaintiff and MTI entered a valid, written contract when Plaintiff and Michery, on behalf of MTI, signed the settlement agreement on August 11, 2020.

38. The Settlement Agreement included the Subclause described above.

39. The parties to the Settlement Agreement were aware at the time that the Net Element LOI was operative at the time of signing the settlement agreement.

40. MTI completed its deal with Net Element in 2021, satisfying the condition of the Subclause.

41.     Plaintiff requested Defendants perform their contractual obligation by providing Plaintiff with the full amount of the 400,000 shares due to him upon conclusion of the deal with Net Element.

42.     Defendants refused to provide Plaintiff with the full amount of 400,000 shares he was due, according to the Settlement Agreement.

43.     Mullen and/or Michery unilaterally modified the settlement agreement post-signing by crossing out the subclause.

44.     Defendants did not modify the contract in an enforceable manor.

45.     Defendants cannot rely on the striking of the Subclause to relieve them from performance because the modification is unenforceable.

46.     Mullen's failure to perform has directly harmed Plaintiff by depriving him of stock to which he is contractually entitled.

**Count Two**

**Unjust Enrichment**

47.     Plaintiff incorporates by reference all paragraphs of this Complaint as if fully stated herein.

48.     Defendants unjustly enriched themselves when refusing to furnish Plaintiff with 400,000 shares after completing its deal with Net Element.

49.     Defendants currently retain the benefit of the unjust enrichment because they maintain control of 368,861 shares due to Plaintiff.

50.     Defendants' unjust enrichment of themselves, through withholding Plaintiff's shares, has directly harmed Plaintiff by depriving him of stock to which he is entitled.

**Count Three**

**Breach of Implied Covenant of Good Faith and Fair Dealing**

51.     Plaintiff incorporates by reference all paragraphs of this Complaint as if fully stated herein.

52.     Defendants owed Plaintiff a duty of good faith and fair dealing following their entering into the Settlement Agreement.

53.     Defendants breached the covenant of good faith and fair dealing when they materially and unilaterally altered the contract between them and Plaintiff.

54.      Defendants further breached the covenant while using the post-signing, material alteration of the Settlement Agreement as justification for not furnishing Plaintiff with shares owed to him.

55.     Defendants' failure to comply with the covenant has directly harmed Plaintiff by depriving him of stock to which he is entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court grant Plaintiffs the following relief against the Defendants:

i.  A declaration that Defendants breached the Settlement Agreement entered into with Plaintiff;

ii. All recoverable compensatory and other damages sustained by Plaintiff;

iii. The furnishing of the outstanding shares and/or the monetary amount thereof, owed to Plaintiff;

iv. Pre- and post-judgment interest; and

v. Such other relief as the Court deems just and proper.

Dated: March 15, 2022             PEIFFER WOLF CARR KANE CONWAY & WISE, LLP

                                  */s/ Adam B. Wolf*
                                  Adam Wolf

                                  ADAM B. WOLF (Bar No. 215914)
                                  PEIFFER WOLF CARR KANE CONWAY & WISE, LLP
                                  5042 Wilshire Blvd., No. 304
                                  Los Angeles, CA 90036
                                  Telephone: 415.766.3545
                                  Facsimile: 415.402.0058
                                  Email: awolf@peifferwolf.com

                                  Attorneys for Plaintiff William Alessi

## DEMAND FOR JURY

Plaintiff hereby demands a jury for all claims for which a jury is permitted.

Dated: March 17, 2022              PEIFFER WOLF CARR KANE CONWAY & WISE, LLP

*/s/ Adam B.Wolf*
Adam Wolf

ADAM B. WOLF (Bar No. 215914)
PEIFFER WOLF CARR KANE CONWAY & WISE, LLP
5042 Wilshire Blvd., No. 304
Los Angeles, CA 90036
Telephone: 415.766.3545
Facsimile: 415.402.0058
Email: awolf@peifferwolf.com

Attorneys for Plaintiff William Alessi